## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TONYA GRUCHACZ On Behalf of herself and All Other Persons Similarly Situated,<br><br>                  Plaintiff,<br><br>   -against-<br><br>GENERAL MOTORS, LLC,<br><br>                  Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Tonya Gruchacz, by her attorneys, Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC, on behalf of herself and all others similarly situated, make the following allegations on personal knowledge and information and belief:

## I.    <u>INTRODUCTION</u>

1.    Plaintiff brings this action against General Motors, LLC ("Defendant" or "GM") for and on behalf of herself and a class composed of all current and former owners or lessees of 2013 to 2017 Cadillac ATS, SRX and XTS vehicles and 2014 to 2017 Cadillac CTS, ELR and Escalade vehicles that were manufactured, marketed and sold or leased with the CUE navigation/radio touch screen display (the "CUE System").[1]

2.    According to internal GM Service Bulletins ("Bulletins") released by GM to its dealers, not its consumers, back in December 2014, and then again in August 2017, customers were reporting that their CUE System screen appeared bubbled, cracked, or were delaminating. In

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

the Bulletins, GM then instructed the dealers that if a customer experiences this problem, the dealer should replace the "Integrated Center Stack," which is the technical term for the whole CUE navigation/radio system.  Copies of the Service Bulletins are attached hereto as **Exhibit A.**  Based on the fact that the December 2014 Bulletin refers to existing consumer complaints, GM knew about the CUE System defect well before the issuance of the December 2014 Bulletin.

3.      Despite knowing about this defect for years, GM continued to sell and lease the Class Vehicles with the CUE System without disclosing that the CUE System would soon appear cracked and become unresponsive.  What's worse is that GM continued to market the high quality of the CUE System as providing "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation,"[2] when in fact that information was rendered largely or entirely inaccessible due to the bubbling, cracking, and/or delamination.

4.      This action seeks relief for the injuries sustained as a result of GM's material misrepresentations and omissions regarding the Class Vehicles' CUE System's susceptibility to appearing delaminated, distorted or cracked, and becoming insensitive to touch, thereby rendering it essentially inoperative.

5.      Plaintiffs and the Class and Subclass Members have been damaged by GM's material misrepresentations and omissions because they purchased or leased a Class Vehicle of a quality different than promised and in many instances were charged hundreds of dollars to correct the malfunctioning CUE System.

---

[2] *See*
http://www.cadillac.com/content/dam/cadillac/na/us/english/index/downloads/vehiclebrochures/brochures/2016/2016-cadillac-ats-coupe-brochure.pdf

## II.    PARTIES

6.      Plaintiff Tonya Gruchacz is a citizen of New Jersey.  She resides in Flemington, New Jersey.

7.      Defendant GM is a limited liability company incorporated in Delaware with its principal place of business in Detroit, Michigan. Defendant designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including, but not limited to, Cadillac, in this District and throughout the United States.

## III.    JURISDICTION AND VENUE

8.      This court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because at least one class member is of diverse citizenship from Defendant; there are more than 100 Class Members; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has personal jurisdiction over the parties because Defendant conducts substantial business in New Jersey, has had systematic and continuous contacts with New Jersey, and has agents and representatives that can be found in this State.

9.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred and emanated out of this District, and Defendant's conduct has injured Class and Subclass Members residing in this District. Accordingly, this Court has jurisdiction over this action and venue is proper in this Judicial District.

10.     Defendant is amenable to personal jurisdiction in New Jersey. A substantial portion of the wrongdoing alleged in the Complaint took place in New Jersey and Defendant conducts

business within the state sufficient to be considered present in New Jersey.

## IV.    FACTUAL ALLEGATIONS

11.    GM is a leading manufacturer of consumer automobiles.  In the United States, Defendant manufactures and sells/leases vehicles under numerous brand names, including Buick, Cadillac, Chevrolet and GMC.  Cadillac is marketed as GM's luxury brand, thus GM seeks premium prices for its Cadillac vehicles.  In fact, according to www.cadillac.com, the prices of Cadillac vehicles range from $35,495 for the ATS Sedan to over $93,000 for its Escalade model.

12.    In brochures and its website, GM highlights its Cadillac CUE System, stating it provides "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation" that the vehicle is covered by a bumper to bumper warranty that would cover any costs necessary "to correct any concerns in materials or workmanship."  *See* n.2.

13.    Consequently, consumers are willing to pay more for Cadillac vehicles than those offered by competitors, even when those products have similar features.  Consumers have come to expect that the Cadillac brand vehicles will be of high quality, durable and reliable.

**The Defect**

26.    Touch sensitive electronic materials have been around for many decades and practical touch screens were known in the 1960s.  Resistive touch displays arrived in the 1970s and many different touch technologies were developed subsequently and flourished in a variety of products in the 1990's and forward.

27.    The technology most widely used today in new designs, including in the display of the Cadillac CUE System, is the projected capacitance display, a display technology that projects an electric field above the actual sensing surface such that high bandwidth interrogation of the

electrode arrays can detect multi-point "touching" of the screen even when the capacitance-increasing object, e.g. a finger or a stylus, is near or touching the surface. A major benefit of this technology is that the sensing board itself can be protected by a cover glass through which the sensing field propagates. This is the type of display used in almost all automobiles since it is desired to have the display mounted behind a protective dashboard cover lens for durability and to prevent abuse. The projected capacitance technology is best suited for this design.

28.    Touch screen displays are comprised of two units, the LCD unit that produces the image and the touch screen unit that senses user commands from finger touch and movement or from that of a stylus. The general architecture of these units is shown schematically below:



*Active matrix LCD display (lower section) with*
*projected capacitance touch screen panel (upper section). Diagram not to scale.*

29.    Light generated by a backlight (not shown) is passed through from the bottom where it is polarized before propagating though an LCD array that is controlled by associated transistors. The modulated light is colored according to RGB pixels and then either passed or attenuated by a second polarizing film. In the failed units, this part of the display continues to function properly, although the image cannot be well observed due to the damaged touch panel above.

30.    In well-functioning units the light continues through a glass clad sensing unit comprised of two layers of transparent ITO electrodes that run at right angles to each other and

form a sensing grid as shown in this figure:



*Projected capacitance touch screen panel illustrating typical architecture of Indium Tin Oxide (ITO) sensing electrodes separated by a polymeric adhesive insulating layer.  Diagram not to scale.  Electrode layer enlarged for clarity.*

31.    The two layers must be in close proximity but insulated from each other.  Touch is determined by changes in the electrical capacitance near the surface of the panel caused by proximity of a finger or stylus as determined by the projected field.  The grid network is queried at a suitable frequency and the altered projected capacitance is localized in grid coordinates as a single touch, a multiple touch, or even a movement of touch, and is communicated to the digital processor.

32.    The touch screen of the CUE System fails under normal use when the glass and the adhesive film become separated, or delaminated.  This delamination causes a gap between the separate electrode arrays, see figure below, critically changing the electrical relationships and usually rendering the touch screen inoperative (the "Defect").



*Projected capacitance touch screen panel illustrating delamination of the polymer film. Diagram not to scale.*

33.    Delamination arises either from faulty manufacturing of the sensing panel or by improper installation.  A properly manufactured and properly installed touch screen will not

delaminate under the pattern of use experienced by automotive displays over many years.

34.     The Defect frequently occurs from the edges of the panel due to moisture ingress into the interlayer due to the hygroscopic nature of the interlayer material, which results in failure of the glass/interlayer bond.  Such ingress results from a failure to properly seal the unit during manufacturing, either using inferior sealant materials or a flawed sealing process.  Poor interlayer bonding can also result from improper cleaning and preparation of the glass surface during panel manufacture resulting in delamination.  Flawed installation of the panel in which clamping forces on the panel are excessive or of non-uniform nature can also contribute to delamination by generating strains, warping, and deformation in the glass that exceed the adhesive bond force of the interlayer.

35.     CUE Systems of the Class Vehicles at various points after purchase or lease suffer from the Defect - suddenly appear bubbled, cracked, or delaminated.  As a result, the ability to see the contents of the CUE System becomes extremely difficult.  The following is a picture of a CUE System Display suffering from the Defect:



36.     GM failed to adequately design, manufacture, and/or test the CUE System of its Cadillac vehicles to ensure they were free from defects at the time of sale/lease.

37.     At all relevant times, Plaintiff has used her vehicle and CUE System in a foreseeable manner and in the manner in which they were intended to be used.

38.     The Defect, which manifests during the expected useful life of the Vehicle, both within and outside applicable warranty periods, causes the screen of the CUE System to suddenly become delaminated and appear bubbled, warped, or cracked, thus preventing the CUE system from performing its essential function, making it impossible for Plaintiff and Class and Subclass members to use their CUE system as intended during their expected useful life.

39.     The Defect rendered the CUE Systems unfit for the ordinary purpose for which CUE Systems are sold/leased at the time they were sold/leased to Plaintiff and members of the Class and Subclass.

40.     The Defect has necessitated and will continue to necessitate replacement of and/or costly repairs to the CUE System.

**Plaintiff's Experience**

41.     Plaintiff Tonya Gruchacz purchased a new 2014 Cadillac ATS from the Flemington Cadillac dealership in Flemington, NJ on August 7, 2013 for approximately $50,000. The vehicle included a CUE System display that GM marketed to Plaintiff and all Class and Subclass Members as providing "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation." *See* n.2. GM also marketed that the vehicle was covered by a bumper to bumper warranty that would cover any costs necessary "to correct any concerns in materials or workmanship." *Id.*

42.     Based on these representations, Plaintiff reasonably assumed that with a price tag of approximately $50,000, the vehicle she purchased would come with the CUE System that provided the state of the art touch screen technology GM marketed, and that GM was not selling the vehicle with any known defects.

43.     The vehicle came with a 4-year, 50,000 mile warranty.  The terms of the warranty were as follows:

> **Bumper-to-Bumper (Includes Tires)**.  Coverage is for the first 4 years or 50,000 miles, whichever comes first.
>
> **What is Covered**
> …
> **Repairs Covered**.  The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or

workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

**No Charge**. Warranty repairs including towing, parts, and labor, will be made at no charge.

44.    In late 2016, or early 2017, while her vehicle was still within the 4-year, 50,000 mile warranty period, Plaintiff's CUE System touch screen became unresponsive. Shortly after, Plaintiff called Flemington Cadillac to report the issue. The representative at Flemington Cadillac said the Defect was not covered under warranty because the vehicle was now out of the warranty. Despite the fact that Defendant had issued two bulletins regarding the Defect, and both were issued during the warranty period, Plaintiff was told she would have to pay GM about $1,200 to have the CUE System repaired.

45.    In or around July 2017, the CUE System screen of Plaintiff's vehicle suddenly appeared cracked or shattered. It was still unresponsive to touch.

46.    Within one week of noticing that the screen appeared cracked, Plaintiff called the Cadillac Flemington dealership service department to report the issue. Without even seeing the vehicle, the service department representative indicated he knew exactly the issue Plaintiff was experiencing. Despite having notice of the Defect, the GM representative told Plaintiff that because the vehicle was out of warranty, the cost for GM to repair the Defect was $1,200.

47.    On March 1, 2018, Ms. Gruchacz brought her vehicle to Flemington Cadillac for an unrelated recall. At that time, she informed them again that the CUE System screen appeared shattered and was not responding to touch. The Flemington Cadillac dealer service representative informed Ms. Gruchacz that they "see this issue all the time…the screen is not cracked, it's the laminate." Despite admitting that the issue Ms. Gruchacz was experiencing with her CUE System

screen is a common problem, Flemington Cadillac estimated it would cost Plaintiff $1,053.58 to repair the CUE System screen. A copy of the estimate is attached hereto as **Exhibit B.**

48.    To date, GM has refused to repair Plaintiff's CUE System unless she pays them no less than $1,053.58 plus tax. Thus, Plaintiff's CUE System still suffers from the Defect.

**Plaintiff's and Class Members' Reasonable Expectations**

49.    In purchasing their Class Vehicles, Plaintiff reasonably expected the CUE Systems to remain intact and operate in accordance with all of the CUE System's intended purposes – providing viewable information/content including navigation, radio and surrounding areas of the vehicle transmitted by the numerous cameras placed on the outside of the car, and operable by touch.

50.    Plaintiff and the Class and Subclass Members reasonably expected the CUE System of the Class Vehicles to remain intact and clearly display the various types of information it was intended to display without obstructions such as a bubbled, cracked or delaminated looking screen.

51.    Plaintiffs and the Class and Subclass Members reasonably expected GM to disclose the existence of a defect that was known to GM at the time of sale, or any time thereafter, namely that the screens of the CUE System will suddenly appear bubbled, cracked or delaminated making it difficult to near impossible to see the contents of the CUE radio/navigation system and causing the touch screen to become unresponsive to touch.

52.    As a result of Defendant's advertising of the warranty and the warranty language, Plaintiff and the Class reasonably expected Defendant to cover the costs necessary to correct the Defect.

53.    Because of the Defect, the CUE Systems in Plaintiff's Class Vehicle failed during its expected useful life, within or outside applicable warranty periods.

54.    As a result of the Defect alleged herein, Plaintiff experienced failure of her CUE

Systems, did not receive the benefit of the bargain, paid a premium price for a vehicle known to contain a defective component, and has incurred actual damages.

**GM Was Aware of the Defect**

55.     Before it sold or leased the Class Vehicles, GM knew, or was reckless in not knowing, that the CUE Systems of the Class Vehicles contained a defect that would cause the screens of the CUE System to suddenly appear bubbled, cracked or delaminated, and to become unresponsive to touch.

56.     GM did not implement a plan to properly address the Defect and instead manufactured and sold/leased subsequent models that contained the same Defect.

57.     GM customers have indicated that they notified and complained to GM about the Defect. GM doesn't issue such bulletins immediately after one customer complains about an issue. Instead, only after a critical mass of people complain does GM consider disclosing the global problem, investigate the issue, determine the cause and a fix, and issue the bulletin.

58.     GM has a history of significant delay in telling its dealers and customers of a defect it has knowledge about. For instance, with regard to the infamous GM ignition switch defect in many of its vehicles manufactured in the years leading up to its bankruptcy in 2009, almost five years passed between the time GM first became aware of the defect and the issuance of the first TSB to its dealers about the defect.[3]

59.     In fact, in an email from Frank Boris, the top defects investigator at the National Highway Traffic Safety Administration ("NHTSA"), to Carmen Benavides, Director of Product Investigations at GM in July 2013, Mr. Boris stated that "The general perception is that G.M. is

---

[3] *See* https://www.npr.org/2014/03/31/297158876/timeline-a-history-of-gms-ignition-switch-defect

slow to communicate, slow to act, and, at times, requires additional effort… [The company required effort from the agency] that we do not feel is necessary with some of your peers."[4]

60.     Accordingly, upon information and belief, because a bulletin is issued only after extensive complaints and then investigation by GM, and because of GM's pattern and practice of failing to timely disclose defects to its dealers, the NHTSA and ultimately its customers, GM was well aware of the Defect before Plaintiff purchased her vehicle in August 2013 – one month after the NHTSA called out GM that it is "slow to communicate, slow to act, and, at times, requires additional effort from the NHTSA."

61.     Upon information and belief, the Defect was a known issue to GM at or about the time it began distributing Class Vehicles with the CUE System containing the Defect.

62.     Consumers, including Plaintiff, have complained repeatedly to GM about this Defect, but GM refuses to properly address and rectify the problem and has failed and refused to reimburse customers for repairs, citing expired warranty periods.

63.     The following is a small sample of consumer complaints regarding the Defect and GM's refusal to properly address it:

**msilva954, Orlando, Florida, 5/3/2015**

It has literally been years since I've posted on this forum. Happy to say my mother has a 2014 ATS 2.0.
Recently the other day she parked the car in a shopping center and when she returned about an hour later she discovered the CUE display has spider web cracked below the external surface. The surface itself is completely smooth and CUE still responds but the spider web cracking is getting worse. I've seen a few other posts with Florida ATS drivers having similar experiences.  Just hoping the dealer does not make a fuss as this happened while away from the car. If replaced I'm hoping years of ownership does not mean this will happen consistently in Florida.

---

[4] *See*  https://www.nytimes.com/2014/04/20/business/sending-alerts-gm-delayed-recall-of-cars.html

https://www.cadillacforums.com/forums/cadillac-ats-general-discussion-forum/705281-cue-screen-cracked-while-parked-sun.html

**Steve2150 on 7/1/2015**
Noticed this morning my ELR's CUE screen had spider cracks mainly on the left side top to bottom. Called my dealer service and was told it is a known issue with all the CUE's not just ELR.Had to come in so they could check it was not something I did before they could order the replacement screen. Brought it in seems it is the screen under the glass as the outer glass was fine. They ordered me a replacement, said first ELR they saw with it but then again how many ELR's out there 2000+ but they had this problem on other Caddy's. Weird that this has not been reported as a known issue. They think it is from the heat, I live in Florida but the tech said he has seen some always garaged and some parked outside.
https://gm-volt.com/forum/showthread.php?181201-ELR-CUE-Spider-Cracks

64.    The    following    are    additional    online    complaints    found    at

https://www.cadillacforum.com/forum/cadillac-srx-10/cue-screen-spider-webbing-16740/ :

**Jim aka mrfixit143, 2/21/2016**
Hi,
I came out to my 2014 SRX yesterday after not driving it for a few days. I noticed that the cue screen on the left side had some spider webbing cracks in the screen , NO impact to the screen from objects and you cant feel the cracks with your nails. I drove it for about 1 hour with the heat on and it appears to have spread into longer cracks. What gives ? I`m contacting my dealer and the Cadillac customer service department and see what they are going to do . I only have 17k on it . I HOPE they dont give me a problem and say its from abuse or misuse, it is a touch screen and I see that other Cadillac`s are having the same issue.

Jim

- **Cadillac Customer Service responded on 2/23/2016:**

  Hi Jim, I'm very sorry to hear about these cracks in your CUE screen. Were you able to get this repaired by your local dealership? If you are still in need of assistance, please send us a private message; we would be happy to help. Ashley R.Cadillac Customer Care

**Jessica aka jessanne, 3/21/2017:**
Hi There, I am having the same problem with the cue screen on my 2013 Cadillac ATS 2.0T it only has 38k and looks brand new. Our local Cadillac dealership said my bumper to bumper warranty expired last month (February). This is clearly a defect in the cue screen and the dealership said it's very common. It's not spiderwebbing yet, just two long internal cracks that couldn't have possibly been caused by an external force because the screen is smooth to the touch, it's an interior crack. The dealership said that it would cost well over a thousand dollars

to replace the screen. It doesn't seem right to have to pay a premium to replace defective equipment on a car with less than 50,000 miles. I am hoping someone on this forum might have some advice for me, if Cadillac won't take care of this I will never own another GMC vehicle again. Companies should stand by their products. -Jessica

**Megan F aka Merockas1402, 10/27/2017**
Ashely R, i hope yoh are still out there!! I purchased a 2013 SRX brand new from our local dealership I have 49,321 miles (under the 50,000) but I am weeks out of the 5 year date from when I picked up my car. My delaership used the new calculator information to give me a quote on fixing my CUE screen because this summers heat & then cold air conditioning put spide web cracks on this inside of the screen. With this issue happening on 2013 & 2014 CUE systems, why should I have to pay close to $150 to have it replaced? Is there anything Cadillac can do about this? Why hasn't a recall been issued for this problem? Thank you. Megan F

**Denise aka Di_808, 12/1/2017**
I have the problem of my Cadillac que infotainment system spider cracking and a GM dealer John Miles in Conyers, GA refused to honor my bumper to bumper warranty on my 2016 SRX in which I am still under 50K miles because screen was cracked. Sad in ATL Denise

**jcluff154 on 12/11/2017**
When I purchased my first Cadillac I was certain they were all I would ever drive again. I absolutely LOVE my 2013 Cadillac SRX, however my touch screen fell victim to the heat and has spider webbing. We took it into the Cadillac dealership and because we were just over the mileage warranty they told us it was not covered. It has only gotten worse since then and now functions on the screen have stopped working. I was told it would be $1500.00 to fix it out of pocket. Now to top it off, my seat warmers have both stopped working. When I turn them on, they shut off 3 seconds later. I am feeling very torn because I can still say to this day that I LOVE my car but with these issues popping up my love of Cadillac is slowly dwindling. Is there anything Cadillac will do to help with the screen issue?

**my3sons on 5/3/2018**
I have 2016 ATS 3.6, 21000 miles, never toughed screen but for finder tips. Regarding "cracks", Its not cracks on mine-. The touch Screen is likely lifting off the display. This happened on first warm day over 80f in NY while parked. The lines are smooth and rounded at ends when one looks close-not actual cracks in glass or plastic. Touch screens are mounted on top of display-likely use glues. Called dealer but sadly they need to SEE it first. Then remove it, inspect, then order it. Not happy this will cost excess time, best be under warranty. 100% sure this is defective mounting or materials. My first Cadi-lets see how this goes. Update: 5-7-18 The dealer service mgr kindly called back today and said they didn't need to see my CUE screen. But they also said they needed to order one since they are out of screens. Likely this is a well known defect, and they cant keep the screens in stock. Still hope they don't

send me a bill after the work, and I hope they don't install another defect waiting to happen. A service bulletin should explain this, so were is one? Heat, time, and bend seems to influence these radial lines in the back screen glue. I have 1 yr left to initial warranty.

*Update 5/18/2018*

Final- update I hope: Cadi Dealer replaced the screen under orig warranty, and seemed to be familiar with this issue. Service mgr noted he has yet to see a repeat screen delamination occur after a replacement. He could not tell me if the screens were made better or differently. To me the issue is the soft glue between the touch screen-sensor screen which seems to start to pull off after excessive heat. If these parts were sandwiched better, or more flatly, this may not happen, unless its just that the glue was not placed on well, or was defective. The lines are AIR which slips inside the screen as the glue shrinks or the screen lifts. This is only My opinion an a jack of all trades engineer. Definitely someone has a bulletin on this and the MFGR is getting holy-hell on the quality as this is costly to someone. Too bad we wont know which screens if any are good ones. I will be curious as to what the real issue was. I should have kept the old screen and ripped it apart to find out myself. Until I know, I will fear warm days but how many can there be in upper NY.

**SRX13087 on 5/14/2018**

HI, I got the same Cue screen spider webbing last week. I parked my SRX 2013 on parking lot of my company for ~8 hrs last Wednesday. When I started my car back home, I suddenly found this spider webbing on my Cue screen. The system is still operational. The break seems from inside out. My SRX 2013 has only <33,000 miles on it. I contacted local Cadillac dealer. They said that it is out of warranty and needs $1,200 non-refundable deposit for repair. I checked internet and found that this seems the problem only found on Cadillac. I feel that this is a quality issue not a use issue. Is there any one who has idea how to handle this problem? Thanks! Steven

**Sfstew on 5/18/2018**
Having the same problem with our 2014 SRX with 60,000 miles. The CUE screen is cracked/spider webbed. The dealer advised this was a $2000.00 repair that we would be responsible for as the car is out of warranty and there is no extended warranty coverage. Since this is a somewhat common problem as evidenced by the other commenters, is there something Cadillac can to help us take care of this issue?

**Jonscott610 on 5/23/2018**
I just went to the dealership yesterday thinking that I'm going to Get my cue screen fixed because the service tech told me over the phone that I would get a free screen replacement because they are aware the Screen in the Cadillac spiders on all the models and that they're fully aware of it but when I get there the story changes to the replacement cost $1,000 and that that the new screen isn't going to spiderweb admitting that the old screen is completely

defective. It's just ridiculous how that They can just blow you off tell you on top of it there's $200 labor for installation so I decided to call the Cadillac manufacturer and tell them that This is a problem and that the dealership knows that the screen is extremely defective and the woman I talked to said that these forums of complaints don't mean anything and that each of us need to call up and physically complain.She said she is aware of the issue but there hasn't been Enough verbal complaints that I can pay the 1,200 and I will be reemberssed for it if key word if a recall comes out. So basically if you own a 2014 or 15 Cadillac you are screwed cause I keep my car garage kept and it still cracked and of coarse I'm at 54,000 miles and my warranty for that type of part is only covered to 50 it just conveniently happened right after the warranty expired. I feel this is a disgrace to the Cadillac legacy that I always dreamed of owning but now my dream car has a defective part that Cadillac is aware of. I just don't get it. Cause I asked how are you guaranteed this doesn't happen again and the writer tells me that it's a totally different material that won't crack that they are fully aware of a defective screen. I feel this should be made public, I'm thinking of going to social media, and I'm going to call Fox News and other news stations and tell them how Cadillac is selling defective parts in there cars and refuse to replace them that something as simple as a lamenant screen for the cue screen that operates everything in the car . One that spiders in nice weather and from heat coming out your vents

- **Cadillac Customer Service responded on 5/24/2018:**

  Hello, Jonscott610. We regret to see the sentiments that you have expressed. We strive to provide high quality, luxury vehicles that exceed our customers' expectations. Please know that your frustrations are certainly recognized and has been do***ented within our internal system. Should you need further assistance, please email socialmedia@gm.com.

**Natasha on 6/14/2018**
I was told by my dealership that the CUE screen was covered under basic warranty and while we were under the mileage parameter, we were over 4 years old, so it is not covered for us. We were quoted $3000 (CAD) for parts and labor to replace it. Unacceptable. Now that I know Cadillac is aware of the issue and knows of the DEFECT, how can they possibly expect their CUSTOMERS to pay for that? Waiting to hear back from Customer Service -- will take to social media, if need be.

**Roger Farleigh on 8/12/2018**
I have a 2014 cts, screen has been spidering, i called my dealer last year and they said that it was not covered under warranty, Now the screen barley works. I now have 83000 miles on it. Is there some sort of policy out there for this?

**sonialistman on 1/30/2019**
I have a 2014 Cadillac ATS.but bought 11/2015 .that had same problem on 12/27/2017 they replace with out a problem. Now it's 1/30/2019 An same problem again. I called an was told $187.00 for labor. I understand someone needs paid but I shouldn't be the one paying them.

This is a defect not something I've done. Only 34,000 on car an the new replacement was on 14 months ago. I'm waiting for a call back since I refuse to pay for a defected part an seeing I'm not the only one isn't right. I will go to the top of the chain then my family lawyer. This issue needs fixed period!! Might be looking for something other then a Cadillac if this doesn't go right... I seen on here there is a class action law suit 😕

**JensK on 3/2/2019**
Hello, my wife has a 2015 SRX and she just noticed spider cracks on the Cue display. We took it to the local dealer and the said it is not covered under the extended warranty. Is there anything that can be done? They want to charge $1500. It is sad to drive a beautiful car an then the screen in the center looks horrible.

## GM's Misrepresentations and Omissions

65.     GM is experienced in the design and manufacture of vehicles and conducts pre and post-release testing on its vehicles and vehicle components in testing facilities located throughout the United States.  Such tests are designed to verify that the vehicles and their components, like the CUE Systems, are free from defects and comply with GM's specifications, warranty promises, and consumer expectations.

66.     GM likely conducted pre and post-release testing on the CUE Systems in order to ensure its components were free from defects.  As a result, GM knew or should have known that the CUE systems were defective and that the Defect would render its navigation and other features useless.

67.     Furthermore, through its product testing, GM knew or should have known that there was a high likelihood that the Defect would manifest after the applicable warranty periods.

68.     If GM  failed to test the CUE Systems then it failed to ensure that the vehicles were as warranted and advertised, and/or knew, had reason to know, or was reckless in not knowing of the Defect when it uniformly warranted, advertised, marketed and sold/leased the Class Vehicles to Plaintiff and the Class and Subclass.

69.     GM did not disclose to its customers the fact that the Defect existed at the time of sale/lease and that the Defect would cause the screens of the CUE System to suddenly appear bubbled, cracked or delaminated, making it extremely difficult to near impossible to see the contents of the CUE system  and making the touch screen become unresponsive to touch.

70.     Instead, in its uniform marketing and advertising, GM falsely represented that its Cadillac CUE System provides "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation." *See* n.2.

71.     GM knew that consumers were unaware of the latent defect and that they reasonably expected the CUE Systems not to appear bubbled, cracked or delaminated, and not to become insensitive to touch.  GM also knew that customers expected GM to disclose a defect that would prevent the CUE Systems in the Class Vehicles from remaining intact and performing their function long before the end of their expected useful lives, and that such disclosure would impact consumers' decision whether to purchase/lease the Class Vehicles or to pay the premium for the addition of the CUE System.  GM knew and intended for consumers to rely on its material omissions and misrepresentations with regard to the Defect when purchasing/leasing the Class Vehicles.

72.     As a result of GM's uniform omissions and misrepresentations in its marketing and advertising, Plaintiff and all members of the Class and Subclass believed that the CUE Systems of the Class Vehicles they purchased/leased would operate without defects, and Plaintiff and all members of the Class and Subclass purchased a Class Vehicle with a CUE System in reliance on that belief.

73.     GM's representations that its CUE Systems would provide "real-time information at your fingertips [and] a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation" were not true. GM knew or was reckless in not knowing when it sold/leased the Class Vehicles with CUE Systems, that the Defect would manifest long before the end of the CUE Systems' expected useful lives, rendering the CUE Systems useless due to their inability to clearly display the various types of information properly and their insensitivity to touch.

74.     GM had the capacity to, and did, deceive consumers into believing that they were purchasing Class Vehicles with CUE Systems that were free from defects and could be used to provide various types of information to the driver and passengers such as viewable information/content pertaining to navigation, radio and surrounding areas of the vehicle transmitted by the numerous cameras placed on the outside of the car.

75.     GM actively concealed from and/or failed to disclose to Plaintiff, the Class and Subclass the true defective nature of the CUE Systems, and failed to remove the CUE Systems from the marketplace or take adequate remedial action. GM knew or was reckless in not knowing when it sold/leased the Class Vehicles that they contained a defect that would render the CUE System practically unusable. Furthermore, GM sold/leased and serviced the CUE Systems even though it knew, or was reckless in not knowing, that the CUE Systems were defective and that Plaintiff and Class and Subclass Members would be unable to use the CUE Systems for their intended purpose for the duration of their expected useful life. GM also promised to cover repairs necessary to correct vehicle defects.

76.     GM was and remains under a continuing duty to disclose to Plaintiff and Class and Subclass members the true character, quality, and nature of the CUE Systems, that the Defect

exists, and/or that the CUE Systems are at risk of failing. To this day, GM continues to misrepresent and/or conceal material information from Plaintiff, the Class and Subclass and the public about the Defect in the CUE Systems of the Class Vehicles.

**Fraudulent Concealment Allegations**

77.     Plaintiff's claim arises in part out of GM's fraudulent concealment of the Defect. To the extent that Plaintiff's claims arise from GM's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases her claim. Plaintiff alleges that at all relevant times, including specifically at the time she purchased her Class Vehicle, GM knew, had reason to know, or was reckless in not knowing, of the Defect; GM was under a duty to disclose the Defect based upon its exclusive knowledge of it, its representations about its products, and its concealment of the Defect; and GM never disclosed the Defect to Plaintiff, Class Members, Subclass Members or the public at any time or place or in any manner.

78.     Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to GM:

a.   Who:  GM concealed the Defect from Plaintiff, the Class and Subclass. Plaintiff was unaware of, and therefore unable to identify, the true names and identities of all those individuals at GM responsible for such decisions.

b.   What: GM knew, or had reason to know, at the time it sold/leased the Class Vehicles, or was reckless in not knowing, the fact that an existing defect in the CUE Systems of Class Vehicles would cause the screens of the CUE Systems to appear bubbled, cracked or delaminated and the touch screen to become unresponsive to touch. As a result, the ability to see the content the CUE System provides would become extremely difficult to near impossible and thus the CUE Systems are unable to perform their essential purpose

before the end of their expected useful lives, within or outside the applicable warranty periods. Indeed, GM issued a technical service bulletin to dealers of GM Cadillacs, not consumers, in December 2014 and again in August 2017 regarding the Defect showing they clearly knew about the Defect. *See* **Exhibit A**. Moreover, despite knowledge of the Defect for many years, in its uniform marketing and advertising, GM continued to falsely represent that its Cadillac CUE System provides "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation," And that the written warranty would cover costs necessary to repair the Defect. *See* n.2.

c. When: GM acknowledged the Defect in Service Bulletins published in December 2014 and August 2017. However, as detailed above, GM knew about this problem well before the date it informed its dealers, but not its consumers, about the Defect by way of the Service Bulletin dated December 2014. Nonetheless, GM concealed this material information at all times with respect to the CUE Systems, including before the time of sale/lease of the Class Vehicles, on an ongoing basis, and continuing to this day.

d. Where: GM misrepresented and concealed material information in every communication it had with Plaintiff and the Class and Subclass, including but not limited to communications made through their dealers and agents, and warranties, displays, advertisements, sales documents, warranties, and on GM's website.

e. How: GM made affirmative misrepresentations and concealed material information by not disclosing it to Plaintiff, the Class or Subclass at any time or place or in any manner, even though it had knowledge of the Defect and knew that it would be important to a reasonable consumer, and even though its omissions with regard to

the Defect and consequent premature failures of the CUE Systems were contrary to its representations about the CUE Systems.

f. Why: GM concealed this material information for the purpose of inducing Plaintiff and Class and Subclass members to purchase the Class Vehicles with defective CUE Systems at a premium price and rather than purchasing competitors' vehicles or paying GM less for the Class Vehicles, given their limited utility. Had GM disclosed the Defect, Plaintiff (and reasonable consumers) would not have bought/leased the Class Vehicles with defective CUE Systems, or would have paid less for them.

## V. TOLLING OF STATUTES OF LIMITATION

79.     GM's active and knowing concealment of the problem of the Class Vehicles' CUE Systems Defect since prior to December 2014 when it issued the first Service Bulletin on the Defect, results in the tolling of any applicable statute(s) of limitation.

80.     Plaintiff and Class and Subclass Members could not have reasonably discovered the true reasons for their CUE Systems' Defect until just before this Complaint was filed.

81.     GM had and still has a continuing duty to inform Class and Subclass Members of the truth that the CUE Systems' screen issues result from GM's design, manufacturing, materials and workmanship defects and failings described above, that the Defect requires expensive repairs and diminish the use and value of the CUE Systems and the Class Vehicles.

82.     GM's active concealment of, and breach of its duty to disclose the truth about the reasons for the Defect tolls any applicable statute(s) of limitations.

## VI. CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this action on behalf of herself and all other persons similarly situated, pursuant to Rule 23(a), 23(b)(2), 23(b)(3) and 23(c)(4) of the Federal Rules of

Civil Procedure.

84.    Plaintiff seeks seek certification of a Class and Subclass, initially defined as follows:

> **Class (the "Class"):**
>
> All persons in the United States who purchased or leased a new Class Vehicle with a CUE System.
>
> **Subclass (the "Subclass")**:
>
> All persons in New Jersey who purchased or leased a new Class Vehicle with a CUE System.

85.    Specifically excluded from the Class and Subclass are:  (a) Defendant and any entity in which Defendant has a controlling interest, (b) any of Defendant's officers, directors, employees, agents, representatives, and their family members, and officers, directors, employees, agents, representatives, and their family members of any entity in which Defendant has a controlling interest, and (c) any judicial officers involved in this matter.

86.    **Numerosity/Impracticability of Joinder**: The members of the Class and Subclass are so numerous that joinder of all members would be impracticable.  The proposed Class and Subclass includes tens of thousands of members.  At least tens of thousands of Class Vehicles have been sold/leased.  The Class and Subclass are composed of an easily ascertainable, self-identifying set of individuals and entities that own or leased the Class Vehicles.  The precise number of Class and Subclass Members can be ascertained by reviewing documents in Defendant's possession, custody, and control.

87.    Plaintiff is a member of the Class and Subclass.

88.    **Commonality and Predominance**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class and Subclass.  These common legal and factual questions, include, but are not limited to, the

24

following:

    a.   Were the CUE Systems defectively designed or manufactured?

    b.   Did GM misrepresent or omit facts material to a reasonable consumer?

    c.   Did GM breach its express warranties to the Class and Subclass Members?

    d.   Did GM breach its implied warranties to the Class and Subclass Members?

    e.   Did GM breach the Magnuson-Moss Act in connection with its sales of the Class Vehicles with CUE Systems?

    f.   Did GM negligently design, manufacture, distribute, promote, market and sell/lease the Class Vehicles with CUE Systems?

    g.   Did GM breach the New Jersey Consumer Fraud Act because GM's design, manufacture, distribution, promotion, marketing and/or sales of the CUE System constituted deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact with the intent that the Class and Subclass Members rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the Class Vehicles with CUE Systems?

    h.   To the extent other State laws prohibiting consumer deception are applicable, did GM violate the respective laws of those States?

    i.   Would GM's retention of payment for the Class Vehicles constitute the knowing receipt, acceptance and retention of a benefit from the Class and Subclass Members in circumstances in which such receipt, acceptance and retention of that benefit is unjust?

      j.  As a result of GM's actions and failures to act, are the Class and Subclass Members entitled to compensatory, restitutionary, statutory or other damages against GM?

89.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class and Subclass. Plaintiff and all Class and Subclass Members have been injured by the same wrongful practices by Defendant. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class and Subclass Members and are based on the same legal and remedial theories. Indeed, Plaintiff and all members of the Class and Subclass purchased or leased a subject Cadillac that was marketed and sold or leased to them with a defective CUE System.

90.   **Adequacy**:  Plaintiff will fully and adequately assert and protect the interests of the Class and Subclass Members, and she has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor her attorneys have any interests that are contrary to or conflicting with the Class and Subclass Members.

91.   **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class and Subclass Members is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the Class and Subclass Members are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class and Subclass Member resulting from GM's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class and Subclass Members prosecuting their own separate claims is remote, and, even if every Class and Subclass Member could afford individual litigation, the court system would be unduly

burdened by individual litigation of such cases. Class and Subclass Members do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no unusual difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

92.    In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass Members and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class and Subclass as a whole is appropriate.

## VII.    CLAIMS FOR RELIEF

### FIRST COUNT
### (On Behalf of Plaintiffs, Class and Subclass Members)
### (Breach of Express Warranty)

93.    Each of the above allegations are incorporated herein.

94.    GM expressly warranted to the Class Plaintiff that the CUE System can provide drivers information in "real time." In fact, GM represented in marketing material and on its website that CUE radio/navigation system provides "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation," and that the vehicle was covered by a written warranty that would cover the costs necessary to repair any defects. *See* n.2.

95.    GM also expressly warranted Plaintiff's Cadillac, including the CUE System against defects. Indeed, the Warranty provided with Plaintiff's vehicle states the following:

> **Bumper-to-Bumper (Includes Tires).** Coverage is for the first 4 years or 50,000 miles, whichever comes first.

**What is Covered**

…

**Repairs Covered**.  The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period.  Needed repairs will be performed using new, remanufactured, or refurbished parts.

**No Charge**.  Warranty repairs including towing, parts, and labor, will be made at no charge.

96.    GM received notification about and was on notice of the Defect well before Plaintiff began this litigation, and well before Plaintiff purchased her Cadillac.

97.    Defendant has breached its express warranties, as set forth above, by supplying the Class Vehicles' CUE Systems in a condition which does not meet the Warranty obligations undertaken by GM and by failing to repair or replace the defective CUE Systems or defective parts.

98.    Defendant has received notice from Plaintiff that the Defect in her vehicle manifested within the warranty period only weeks after the unconscionably short warranty period expired.  Despite this notice and GM's knowledge, GM refused to honor its warranty, even though it knew of the Defect in the CUE System.

99.    Moreover, Defendant's advertising that the CUE radio/navigation system provides "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation," and was warrantied to cover all costs associated with the Defect, created an express warranty, which Defendant breached by supplying Plaintiff and the Class and Subclass Members with CUE Systems that contained a defect that caused the CUE System touch screen to become unresponsive and then to suddenly appear bubbled, cracked or delaminated making it extremely difficult or near impossible to see the contents of the CUE radio/navigation system.

100.    Indeed, the Defect manifested within the warranty period when it became

unresponsive to touch prior to the expiration of the 4-year, 50,000 mile warranty. GM's express warranty warranted, for 4 years or 50,000 miles, its affirmation and description of the CUE System's performance. When the CUE System became unresponsive to touch within the warranty period, GM breached its written Warranty and the warranties that the CUE System would provide "Real-time information at your fingertips…[and] a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation," and that the vehicle came with a warranty that covered all costs necessary to repair the Defect.

101.    As a result of these breaches, Plaintiff and Class and Subclass Members sought repairs to their CUE Systems, but GM denied them warranty coverage.

102.    Defendant has been afforded notice and a reasonable opportunity to cure its breach of warranties and/or Plaintiff and the other Class and Subclass members were not required to do so because providing Defendant a reasonable opportunity to cure its breach of written warranties would have been futile. Defendant has been on notice of the Defect from the complaints and service requests it received from Plaintiff and Class members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

103.    Defendant has failed to provide Plaintiff or the Class and Subclass Members, as a warranty replacement, a product that conforms to the qualities and characteristics that GM expressly warranted when it sold/leased the Class Vehicles with CUE Systems to Plaintiff and the Class.

104.    The time limits in GM's express warranty are commercially unconscionable. GM knew that Class and Subclass Members would likely not discover the fact of or the reason their CUE System screens became bubbled, cracked or delaminated until after the 4-year, 50,000 mile warranty period had expired.

105.    Class and Subclass Members had no meaningful opportunity to bargain over, let alone expand, the Class Vehicles' warranty terms.  These warranties are classic adhesion contracts, produced by the manifest and massive differences between GM's and individual Class and Subclass Members' bargaining power, whose terms were uniform and uniformly of the "take it or leave it" variety.

106.    Plaintiff and Class and Subclass Members have complied with all of their obligations under their Class Vehicles' warranties.  To the extent they have not, such compliance is excused by GM's misconduct.

107.    GM's breach of its express warranties caused damages to Plaintiff and the Class and Subclasses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class and Subclass request that the Court issue an Order and grant Judgment in their favor as follows:

A.    Certifying this action as a Class Action;

B.    Naming Plaintiff as the representative of the Class and Subclass and on behalf of the absent Class and Subclass Members;

C.    Appointing Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC as Class Counsel for all purposes in this action;

D.    Granting Plaintiff and Class and Subclass Members contractual, restitutionary and statutory damages in full recompense for their damages, including and not limited to damages relating to the following:

1)  Repair costs;

2)  All recoverable compensatory and other damages sustained by Plaintiff and the Class and Subclass;

3)  Restitution and disgorgement of all amounts obtained by GM as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

E.    Granting the Plaintiff and Class and Subclass Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.    Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

**SECOND COUNT**
**(On Behalf of Plaintiff, Class and Subclass Members**
**(Breach of Implied Warranty)**

108.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

109.    The Class Vehicles are "goods" under the Uniform Commercial Code ("UCC").

110.    GM is a "merchant" under the UCC.

111.    GM made implied warranties to Plaintiff and Class and Subclass Members about the merchantable quality of the CUE System.

112.    GM impliedly warranted, among other things, that the CUE Systems were of good and merchantable quality, and would actually be able to display information to drivers of the Class Vehicles.

31

113.   Through the conduct alleged herein, GM has breached the implied warranty of fitness for a particular purpose.  The defectively designed CUE Systems were not fit for the particular purpose for which they were purchased by Plaintiff and Class and Subclass Members. Plaintiff and Class and Subclass Members purchased the Class Vehicles with CUE Systems, at an additional price for those Systems, for a particular purpose of having access to viewable information/content pertaining to, among other things, navigation, radio and surrounding areas of the vehicle transmitted by the numerous cameras placed on the outside of the car.  GM knew that Plaintiff, Class and Subclass Members were purchasing the Class Vehicles with CUE Systems for this purpose and marketed the CUE Systems for this particular purpose, even advertising that it provides "[r]eal-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation."

114.   Plaintiff and Class and Subclass Members relied on Defendant's misrepresentations by purchasing the Class Vehicles with CUE Systems.

115.   Defendant knew or had reason to know that Plaintiff and Class and Subclass Members were influenced to purchase the Class Vehicles with CUE Systems through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

116.   The CUE Systems were not of merchantable quality and were not fit for their particular intended use because the design and/or manufacturing defects alleged herein render them incapable of being able to transmit information to the driver and passengers such as viewable information/content pertaining to navigation, radio and surrounding areas of the vehicle transmitted by the numerous cameras placed on the outside of the car.

117.   Defendant's actions, as complained of herein, breached its implied warranty that

the CUE Systems were of merchantable quality as fit for such use, in violation of the Uniform Commercial Code (UCC § 2-314 and § 2-3154) and the common law of this State, as well as the common law and statutory laws of the other states.

118.    Plaintiff and Class and Subclass Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty. In particular, Plaintiff and Class and Subclass Members would not have purchased the Class Vehicles with CUE Systems had they known the truth about their defects, or they would have paid less for the CUE Systems; nor would they have suffered the damages associated with these defects.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff and the Class and Subclass request that the Court issue an Order and grant Judgment in their favor as follows:

A.    Certifying this action as a Class Action;

B.    Naming Plaintiff as the representative of the Class and Subclass and on behalf of the absent Class and Subclass Members;

C.    Appointing Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC as Class Counsel for all purposes in this action;

D.    Granting Plaintiff and the Class and Subclass contractual, restitutionary and statutory damages in full recompense for their damages, including and not limited to damages relating to the following:

1)    Repair costs;

2)    Restitution and disgorgement of all amounts obtained by GM as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

E.    Granting Plaintiff and the Class and Subclass Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.    Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

### THIRD CAUSE OF ACTION
#### (On Behalf of Plaintiff, Class and Subclass Members)
#### Violation of Magnuson-Moss Act (15 U.S.C. §2301 et seq.)

119.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

120.    Plaintiff and Class and Subclass Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq* ("Magnuson Moss Act").

121.    GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act.

122.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Act.

123.    Under the Magnuson-Moss Act, GM was obligated to disclose to consumers the known defects of the Class Vehicles, in particular, the Defect in the CUE System of the Class Vehicles.

124.    Under the Magnuson-Moss Act, GM was obligated to repair or otherwise remedy the Defect of the CUE Systems of the Class Vehicles.

125.    Despite reasonable opportunity to honor its disclosure and remedy obligations, GM

34

violated these obligations under the Magnuson-Moss Act, causing injury to Plaintiff and Class and Subclass Members.

126.    The amount in controversy with respect to the Class Plaintiff's individual claim meets or exceeds the sum or value of $25. There are more than 100 individuals in the Class. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class and Subclass request that the Court issue an Order and grant Judgment in their favor as follows:

A.    Certifying this action as a Class Action;

B.    Naming Plaintiff as the representative of the Class and Subclass and on behalf of the absent Class and Subclass Members;

C.    Appointing Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC as Class Counsel for all purposes in this action;

D.    Granting the Plaintiff and the Class and Subclass contractual, restitutionary and statutory damages in full recompense for their damages including and not limited to damages relating to the following:

1)  Repair costs;

2)  Restitution and disgorgement of all amounts obtained by GM as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

E.      Granting the Plaintiff and the Class and Subclass Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.      Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## FOURTH CAUSE OF ACTION
### (On Behalf of Plaintiff, Class and Subclass Members)
#### Unjust Enrichment

127.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

128.    Defendant GM has been unjustly enriched and received an economic benefit by the sale or lease of the Class Vehicles with CUE Systems herein to Plaintiff and Class and Subclass Members.

129.    Plaintiff seeks to recover for Defendant GM's unjust enrichment.

130.    Plaintiff and Class and Subclass Members conferred a benefit on Defendant GM, but Defendant GM failed to disclose its knowledge that they did not receive what they paid for and misled Plaintiff and the Class and Subclass Members regarding the misstatements and omissions of the Class Vehicles' CUE Systems while profiting from this deception.

131.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Defendant GM to retain the benefit of these profits from the additional amounts that Plaintiff and Class and Subclass Members paid for the defective CUE Systems.

132.    Plaintiff and Class and Subclass Members, having been injured by Defendant

GM's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Defendant GM to their detriment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class and Subclass request that the Court issue an Order and grant Judgment in their favor as follows:

A.      Certifying this action as a Class Action;

B.      Naming Plaintiff as the representative of the Class and Subclass and on behalf of the absent Class and Subclass Members;

C.      Appointing Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC as Class Counsel for all purposes in this action;

D.      Granting the Plaintiff and the Class and Subclass contractual, restitutionary and statutory damages in full recompense for their damages including and not limited to damages relating to the following:

1) Repair costs;

2) Restitution and disgorgement of all amounts obtained by GM as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

E.      Granting the Plaintiff and the Class and Subclass Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.      Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards

in other similar cases of comparable difficulty and complexity.

## FIFTH CAUSE OF ACTION
### (On Behalf of Plaintiff, Class and Subclass Members)
### Common Law Fraud

133.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

134.    The above described conduct and actions constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Defendant in inducing Plaintiff and the Class and Subclass to purchase the Class Vehicles with CUE Systems with the Defect.

135.    Defendant, upon information and belief, made the above-described misrepresentations, concealment and omissions of material facts to all Class and Subclass Members concerning the Defect. GM did not disclose to its customers the fact that the Defect existed at the time of sale or lease and that the Defect would cause the screens of the CUE System to suddenly appear bubbled, cracked or delaminated, resulting in the ability to see the contents of the CUE radio/navigation system to become extremely difficult to near impossible and the touch screen to become unresponsive to touch. Nor did GM disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, briefly delay the impact of the Defect. Instead, in its uniform marketing and advertising, GM falsely represented that its Cadillac CUE radio/navigation system provides "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation." *See* n.2.

136.    Defendant intended that Plaintiff and members of the Class and Subclass rely upon the above-described uniform misrepresentations, concealment and omissions.

137.    Defendant's misrepresentations, concealments and omissions concerning the Defect were material to Plaintiff's and Class and Subclass Members' decisions to purchase the Class Vehicles with CUE Systems.  In fact, the representations and omissions regarding the Defect were so fundamental to Plaintiff's and Class and Subclass Members' decision-making process that they would not have purchased the Class Vehicles with CUE Systems, at the additional cost for such Systems, had they known that the CUE Systems would suddenly appear bubbled, cracked or delaminated resulting in the ability to see the contents of the CUE radio/navigation system to become extremely difficult to near impossible and the touch screen to become unresponsive to touch, or would have paid less than they did for the defective CUE Systems.

138.    Plaintiff and Class and Subclass Members reasonably and justifiably relied upon Defendant's misrepresentations, concealment and omissions to their damage and detriment.

139.    Plaintiff and the Class and Subclass suffered the damage described in this complaint as a proximate result thereof.

140.    Defendant's conduct was willful, wanton, and reckless.  Based on the intentionally dishonest nature of Defendant's conduct, which was directed at Plaintiff, the Class and the Subclass, Defendant should also be held liable for punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class and Subclass request that the Court issue an Order and grant Judgment in their favor as follows:

A.    Certifying this action as a Class Action;

B.    Naming Plaintiff as the representative of the Class and Subclass and on behalf of the absent Class and Subclass Members;

39

C.      Appointing Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC as Class Counsel for all purposes in this action;

D.      Granting the Plaintiff, and the Class and Subclass compensatory, punitive and statutory damages in full recompense for their damages including and not limited to damages relating to the following:

    1) Repair costs;

    2) All recoverable compensatory and other damages sustained by Plaintiff and the Class and Subclass;

E.      Granting the Plaintiff and Class Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.      Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## SIXTH CAUSE OF ACTION
### (On Behalf of Plaintiff and Subclass Members)
### Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.)

141.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

142.    Numerous controlling state and federal cases recite and explain the broadly remedial aims of the New Jersey Consumer Fraud Act (hereinafter "NJFCA").

143.    The Class Vehicles are "merchandise" within the meaning of the NJCFA.

144.    Plaintiff and Subclass Members are "consumers" within the protective ambit of the

NJCFA.

145.    Protecting Plaintiff and Subclass Members from and against "any unconscionable commercial practice, deception, fraud, false pretense, or misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise,"[5] the NJCFA applies to GM's sales of the Class Vehicles to Plaintiff and Subclass Members.

146.    Defendant, upon information and belief, made the above-described misrepresentations, concealment and omissions of material facts to Plaintiff and all Subclass Members. GM did not disclose to its customers the fact that the Defect existed at the time of sale and that the Defect would cause the screens of the CUE System to suddenly appear bubbled, cracked or delaminated, making it extremely difficult or near impossible to see the contents of the CUE radio/navigation system and making the touch screen become unresponsive to touch. Nor did GM disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect and would only, at best, briefly delay the impact of the Defect. Instead, in its uniform marketing and advertising, GM falsely represented that its Cadillac CUE radio/navigation system provides "Real-time information at your fingertips. Cadillac CUE2 provides a suite of information and entertainment offerings as climate, audio and settings control plus available 3-D GPS navigation." *See* n.2.

147.    GM's distribution, promotion, marketing, sale, and leasing to Subclass members of the Class Vehicles with CUE Systems, without disclosing that the CUE Systems will suddenly appear bubbled, cracked or delaminated making it extremely difficult or near impossible to see the

---

[5] N.J.S.A. 56:8-2.

contents of the CUE radio/navigation system  and making the touch screen become unresponsive to touch, was an unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or otherwise constituted the knowing, concealment, suppression or omission of material fact with the intent that  Plaintiff and Subclass Members would rely upon GM's knowing, concealment, suppression or omission of information that the CUE Systems had the Defect.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Subclass request that the Court issue an Order and grant Judgment in their favor as follows:

A.    Certifying this action as a Class Action;

B.    Naming Plaintiff as the representative of the Subclass and on behalf of the absent Subclass Members;

C.    Appointing Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC as Class Counsel for all purposes in this action;

D.    Granting the Plaintiff and the Subclass Members compensatory and statutory treble damages in full recompense for their damages including and not limited to damages relating to the following:

1)    Repair costs;

2)    All recoverable compensatory and other damages sustained by Plaintiff and the Subclass;

E.    Granting the Plaintiff and Subclass Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.    Granting Class Counsel an award of their attorneys' fees and costs of suit,

reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity, pursuant to N.J.S.A. 56:9-18.

### SEVENTH CAUSE OF ACTION
#### (On Behalf of Plaintiff and Subclass Members)
#### Violation of New Jersey Truth-in-Consumer, Contract, Warranty and Notice Act
#### ("TCCWNA")
#### (N.J.S.A. 56:12-14, et seq.)

148.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

149.    Plaintiff and those similarly situated are "consumers" within the meaning of TCCWNA, as set forth at N.J.S.A. 56:12-15.

150.    Defendant is a seller within the meaning of TCCWNA, as set forth at N.J.S.A. 56:12-15 and -17.

151.    TCCWNA, at N.J.S.A. 56:12-15, provides in relevant part that "no seller, creditor, lender or bailee may offer or enter into any written consumer contract or give or display any notice which includes any provision that violates a clearly established right of the consumer or responsibility of the seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed."

152.    By violating the NJCFA, and a clearly established legal right of a consumer and/or responsibility of the seller to not engage in any misrepresentations, deception, or unconscionable commercial conduct in connection with consumer sales as detailed in this Complaint, Defendant

thereby violated the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq.*

153.    As the result of Defendant's violations of TCCWNA, Plaintiff and the Subclass Members are entitled to statutory damages of not less than $100 each as provided by N.J.S.A. 56:12-17.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Subclass request that the Court issue an Order and grant Judgment in their favor as follows:

A.    Certifying this action as a Class Action;

B.    Naming Plaintiff as the representative of the Subclass on behalf of the absent Subclass Members;

C.    Appointing Poulos LoPiccolo PC and Lite DePalma Greenberg, LLC as Class Counsel for all purposes in this action;

D.    Granting the Plaintiff and the Subclass Members compensatory and statutory damages of not less than $100 pursuant to TCCWNA. N.J.S.A. 56:12-17 in full recompense for their damages including and not limited to damages relating to the following:

1) Repair costs;

2) All recoverable compensatory and other damages sustained by Plaintiff and the Subclass;

E.    Granting the Plaintiff and Subclass Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.    Granting Class Counsel an award of their attorneys' fees and costs of suit,

reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity, pursuant to N.J.S.A. 56:12-17.

### VIII.   DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED:  August 2, 2019

**POULOS LOPICCOLO PC**

By:  */s/ Joseph LoPiccolo*
     Joseph LoPiccolo (NJ ID#090792013)
     John N. Poulos (NJ ID#030032001)

1305 South Roller Road
Ocean, NJ 07712
732-757-0165
lopiccolo@pllawfirm.com
poulos@pllawfirm.com

Bruce D. Greenberg (NJ ID#014951982)
**LITE DEPALMA GREENBERG, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
973-623-3000
bgreenberg@litedepalma.com

# EXHIBIT A



Bulletin No.: PIC6055
Date: Dec-2014

# Service Bulletin

## PRELIMINARY INFORMATION

**Subject:**       Integrated Center Stack Display Delaminating Distorted Or Appears Cracked Behind Lens

**Models:**       **2013-2014 Cadillac ATS, SRX, XTS**
                  **2014 Cadillac CTS VIN A, ELR**
                  **Equipped with Cadillac CUE 8 inch Touch Screen**

## Condition/Concern

Some customers may report that their radio screen appears bubbled, cracked, or is delaminating.

## Recommendation/Instructions

If this concern is encountered, replace the ICS (Integrated Center Stack) by following the SI replacement procedure.



## Parts Information

Use the latest part number available from your ESC (Electronic Service Center).

## Warranty Information

For vehicles repaired under warranty use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| 3420700 | Radio Control Assembly Replacement   Radio Control Assembly Replacement | Use Published Labor Operation Time |

Please follow this diagnostic or repair process thoroughly and complete each step. If the condition exhibited is resolved without completing every step, the remaining steps do not need to be performed.

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.

WE SUPPORT VOLUNTARY TECHNICIAN CERTIFICATION

Document ID: 4855288

# #PIC6055C: Integrated Center Stack Display Delaminating Distorted Or Appears Bubbled Behind Lens - (Aug 21, 2017)

**Subject:** Integrated Center Stack Display Delaminating Distorted Or Appears Bubbled Behind Lens



| Brand: | Model: | Model Year: | | VIN: | | Engine: | Transmission: |
|---|---|---|---|---|---|---|---|
| | | from | to | from | to | | |
| Cadillac | ATS | 2013-2017 | | All | All | All | All |
| Cadillac | SRX | 2013-2017 | | All | All | All | All |
| Cadillac | XTS | 2013-2017 | | All | All | All | All |
| Cadillac | CTS Vin A | 2014-2017 | | All | All | All | All |
| Cadillac | ELR | 2014-2017 | | All | All | All | All |
| Cadillac | Escalade | 2014-2017 | | All | All | All | All |

**Supersession Statement**

This PI was superseded to update the Model Years and Recommendation section. Please discard PIC6055B.

**Condition/Concern**

Customers may report their radio screen appears bubbled or is delaminating.

**Recommendation/Instructions**

If this concern is encountered, replace the ICS (Integrated Center Stack) by following the SI replacement procedure.

**Note:** THIS PI ONLY APPLIES TO THE TOUCH SCREEN (see picture below). If the ICS was damaged by cleaning agents or excessive force do not refer to the information in this PI, please refer to the latest version of bulletin 08-08-44-015.

2013-2017 model years, please contact your ESC and replace the ICS for this concern.

Effective 8/21/2017, for model years 2017 and prior the Cadillac CUE ICS is no longer on GM TAC Restriction.  Please contact your ESC directly.




**Parts Information**

Use the latest part number available from your ESC (Electronic Service Center).

**Warranty Information**

For vehicles repaired under warranty use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| 3420700 | Radio Control Assembly Replacement | Use Published Labor Operation Time |

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer".  They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely.  If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition.  See your GM dealer for information on whether your vehicle may benefit from the information.

WE SUPPORT
VOLUNTARY
TECHNICIAN
CERTIFICATION

© 2017 General Motors.  All rights reserved.

# EXHIBIT B

Customer #: 182772

REPAIR ESTIMAT
Page 1 of 2

RO #130644

**Flemington**
**CHEVROLET • BUICK • GMC • CADILLAC**

TONYA GRUCHACZ
1060 COUNTY ROAD 523
FLEMINGTON, NJ 08822

HOME: (609) 203-6452      CONT: tonya.gruchacz@frfars.org
BUS : (908) 243-4924     CELL: (609) 203-6452

211 Route 202
Flemington, NJ 08822
Service Direct: (908) 782-3330
Sales: (908) 782-3331 · Fax: (908) 806-0352
www.flemington.com

SERVICE ADVISOR:  **Jessica Rogers**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | | TAG |
|---|---|---|---|---|---|---|---|
| BLACK_DIAM | 2014 | CADILLAC ATS | 1G6AH5R33E0108632 | USD80U | 85037 | | 106-006 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 08/07/2013 | | | | | | | 03/01/2018 |

| R.O. OPENED | READY | |
|---|---|---|
| | | Sold:STK#G8234 ENG:3.6_Liter_SIDI_DOHC TRN:MYA |

| LINE | OP CODE | DESCRIPTION | DURATION | ESTIMATE |
|---|---|---|---|---|
| # A | CONCERN | **CUSTOMER STATES THAT THE RADIO SCREEN IS NOT WORKING WHEN TOUCHING THE TOUCH SCREEN. NOTHING WILL HAPPEN. CHECK AND ADVISE. | | 0.00 |
| | M165984 | RADIO/MULTI-DISPLAY ASSEMBLY - R&R | 1.50 | 1053.58 |
| # B | DIAGNOSIS | Our Factory Trained Technician will analyze and perform a computerized diagnosis relating to the PUT IN MIL. An estimate for repairs or additional diagnosis as required will be provided to you. The diagnostic fee, up to 124.95, does not include cost of parts and or labor to complete the repair. Dealership will determine eligibility and fee may be waived if covered under factory or extended warranty. | | 127.95 |
| # C | CONCERN | CUSTOMER WOULD LIKE A PRICE ON A DRAIN AND FILL ON TRANSMISSION FLUID. | | 0.00 |
| | MA27 | PERFORM TRANSMISSION FLUID EXCHANGE | 1.00 | 246.55 |
| # D | CONCERN | CUSTOMER STATES THAT THERE IS A POSSIBLE OIL LEAK UNDERNEATH THE VEHICLE. CHECK AND ADVISE. | | 0.00 |
| | M155583 | FRONT DIFFERENTIAL PINION SHAFT SEAL - R&R | 2.80 | 402.02 |
| | EN274 | REPLACE OIL PAN DRAIN PLUG | 0.70 | 102.93 |
| # E | CONCERN | CUSTOMER STATES THAT THE FRONT BALL JOINTS FOR THE LOWER CONTROL ARMS NEED TO BE REPLACED WOULD LIKE A QUOTE. | | 0.00 |
| | M072754 | FRONT LOWER CONTROL ARM REAR LINK/BALL JOINT - R&R | 2.40 | 554.28 |
| | FS02 | Alignment - 4 Wheel | 1.00 | 99.95 |
| # F | MPI | Perform Multi-Point Inspection | | 0.00 |
| | | ADDITIONAL SERVICE RECOMMENDATIONS | | |

EXCLUSION OF WARRANTIES
Any warranties on the pans and accessories sold hereby are made by the manufacturer. The undersigned purchaser understands and agrees that dealer makes no warranties of any kind, express or implied, and disclaims all warranties, including warranties of merchantability or fitness for a particular purpose, with regard to the parts and/or accessories purchased; and that in no event shall dealer be liable for incidental or consequential damages or commercial losses arising out of such purchase. The undersigned purchaser further agrees that the warranties excluded by dealer, include, but are not limited to, any warranties that such parts and/or accessories are of merchantable quality or that they will enable any vehicle or any of its systems to perform with reasonable safety, efficiency, or comfort.

AUTHORIZATION FOR REPAIRS
I hereby authorize the repair work herein set forth to be done along with the necessary material and agree that you are not responsible for loss or damage to vehicle or articles left in vehicle in case of fire, theft or any other cause beyond your control or for any delays caused by unavailability of parts or delays in parts shipments by the supplier or transporter. I hereby grant you and/or your employees permission to operate the vehicle herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above vehicle to secure the amount of repairs hereto. The dealership is not responsible for damages from freezing due to lack of antifreeze.

DATE:                SIGNED:

WAIVER OF ADVANCE ESTIMATE
I VOLUNTARILY REQUEST THAT REPAIRS BE PERFORMED ON MY VEHICLE WITHOUT AN ADVANCE ESTIMATE OF THEIR COST. BY SIGNING THIS FORM I AUTHORIZE REASONABLE AND NECESSARY COST TO REMEDY THE PROBLEMS COMPLAINED OF UP TO A MAXIMUM OF $ _____ . THE REPAIR SHOP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL CONSENT.

X

PRELIMINARY ESTIMATE $    5563.17

AUTHORIZED BY  X

| | DATE | TIME | BY |
|---|---|---|---|
| REVISED ESTIMATE (1) | | | |
| REVISED ESTIMATE (2) | | | |
| REVISED ESTIMATE (3) | | | |

I HEREBY ACKNOWLEDGE THAT I WAS NOTIFIED & GAVE ORAL APPROVAL OF THE ABOVE REVISED ESTIMATES:

X

CUSTOMER SIGNATURE

Customer #: 182772

REPAIR ESTIM|
Page 2 of 2

RO #130644

**Flemington**
**CHEVROLET • BUICK • GMC • CADILLAC**
211 Route 202
Flemington, NJ 08822
Service Direct: (908) 782-3330
Sales: (908) 782-3331 • Fax: (908) 806-0352
www.flemington.com

TONYA GRUCHACZ
1060 COUNTY ROAD 523
FLEMINGTON, NJ 08822

HOME: (609) 203-6452
BUS. : (908) 243-4924

CONT: tonya.gruchacz@frfars.org
CELL: (609) 203-6452

SERVICE ADVISOR: *Jessica Rogers*

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|---|---|---|---|---|---|---|
| BLACK_DIAM | 2014 | CADILLAC ATS | 1G6AH5R33E0108632 | USD80U | 85037 | 106-006 |

| DEL DAT E | PROD. DAT E | WARR. EXP. | PROMISED | PO NO. | RAT E | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 08/07/2013 | | | | | | | 03/01/2018 |

| R.O. OPENED | READY | OPTIONS: Sold:STK#G8234 ENG:3.6_Liter_SIDI_DOHC TRN:MYA |
|---|---|---|

| LINE | OP CODE | DESCRIPTION | DURATION | ESTIMATE |
|---|---|---|---|---|
| # G | 4TIRE | MOUNT AND BALANCE 4 TIRES 225/45/17 MICHELIN PRIMACY | | 906.77 |
| # H | 4TIRE | OPTION B: MOUNT AND BALANCE 4 TIRES 225/45/17 CONTI PRO CONTACT | | 851.57 |
| # I | 4TIRE | OPTION C: MOUNT AND BALANCE 4 TIRES 255/45/17 GENERAL GMAX | | 488.22 |
| # J | BRPRRR | REPLACE WITH A/C DELCO REAR BRAKE PADS AND ROTORS | | 394.33 |



| | | |
|---|---|---|
| | Subtotal | 5228.15 |
| | Shop Charges | 0.00 |
| Printed On 03/01/2018 1:48 PM | Sales Tax | 335.02 |
| Estimate Expires on 03/31/2018 | **Total** | **5563.17** |

EXCLUSION OF WARRANTIES
Any warranties on the parts and accessories sold hereby are made by the manufacturer. The undersigned purchaser understands and agrees that dealer makes no warranties of any kind, express or implied, and disclaims all warranties, including, warranties of merchantability or fitness for a particular purpose, with regard to the parts and/or accessories purchased; and that in no event shall dealer be liable for incidental or consequential damages or commercial losses arising out of such purchase. The undersigned purchaser further agrees that the warranties excluded by dealer, include, but are not limited to any warranties that such parts and/or accessories are of merchantable quality or that they will enable any vehicle or any of its systems to perform with reasonable safety, efficiency, or comfort.

AUTHORIZATION FOR REPAIRS
I hereby authorize the repair work herein set forth to be done along with the necessary material and agree that you are not responsible for loss or damage to vehicle or articles left in vehicle in case of fire, theft or any other cause beyond your control or for any delays caused by unavailability of parts or delays in parts shipments by the supplier or transporter. I hereby grant you and/or your employees permission to operate the vehicle herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above vehicle to secure the amount of repairs herein. The dealership is not responsible for damages from freezing due to lack of antifreeze.

DATE:          SIGNED:

WAIVER OF ADVANCE ESTIMATE
I VOLUNTARILY REQUEST THAT REPAIRS BE PERFORMED ON MY VEHICLE WITHOUT AN ADVANCE ESTIMATE OF THEIR COST; BY SIGNING THIS FORM, I AUTHORIZE REASONABLE AND NECESSARY COST TO REMEDY THE PROBLEMS COMPLAINED OF UP TO A MAXIMUM OF $          . THE REPAIR SHOP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL CONSENT.

X

PRELIMINARY ESTIMATE $ _____

AUTHORIZED BY  X

| REVISED ESTIMATE (1) | DATE | TIME | BY |
|---|---|---|---|
| REVISED ESTIMATE (2) | | | |
| REVISED ESTIMATE (3) | | | |

I HEREBY ACKNOWLEDGE THAT I WAS NOTIFIED & GAVE ORAL APPROVAL OF THE ABOVE REVISED ESTIMATES:

X

CUSTOMER SIGNATURE